**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X

| | |
|---|---|
| JEFFREY HARRIS, Derivatively On Behalf of CITIGROUP, INC., | : Case No. 07-cv-9841 (SHS) |
| Plaintiff, | : |
| vs. | : |
| CHARLES PRINCE, ET AL., | : |
| Defendants, | : |
| -and- | : |
| CITIGROUP, INC., a Delaware corporation, | : |
| Nominal Defendant. | : |
| GARY CINOTTO, Derivatively On Behalf of CITIGROUP, INC., | : Case No. 07-cv-9900 (SHS) |
| Plaintiff, | : |
| vs. | : |
| CHARLES PRINCE, ET AL., | : |
| Defendants, | : |
| -and- | : |
| CITIGROUP, INC., a Delaware corporation, | : |
| Nominal Defendant. | : |
| BENJAMIN NATHANSON, Derivatively On Behalf of CITIGROUP, INC., | : Case No. 07-cv-10333 (SHS) |
| Plaintiff, | : |
| vs. | : |
| CHARLES PRINCE, ET AL., | : |
| Defendants, | : |
| -and- | : |
| CITIGROUP, INC., a Delaware corporation, | : |
| Nominal Defendant. | : |
| SAM COHEN, Derivatively On Behalf of CITIGROUP, INC., | : Case No. 07-cv-10344 (SHS) |

- 1 -

|                                                      |   |
|------------------------------------------------------|---|
| Plaintiff,                                           | : |
| vs.                                                  | : |
| CITIGROUP, INC., ET AL.,                             | : |
| Defendants.                                          | : |
| WALTER E. RYAN, JR., derivatively on behalf of CITIGROUP, INC., | : Case No. 07-cv-11581 (UA) |
| Plaintiff,                                           | : |
| vs.                                                  | : |
| CHARLES PRINCE, ET AL.,                              | : |
| Defendants,                                          | : |
| -and-                                                | : |
| CITIGROUP, INC., a Delaware Corporation,             | : |
| Nominal Defendant.                                   | : |

-------------------------------------------------------X

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF JEFFREY HARRIS' MOTION TO CONSOLIDATE ALL RELATED SHAREHOLDER DERIVATIVE ACTIONS AND APPOINT A LEADERSHIP <u>STRUCTURE FOR PLAINTIFFS</u>**

**I.     INTRODUCTION**

Plaintiff Jeffrey Harris ("Plaintiff") filed his respective shareholder derivative action on behalf of Citigroup, Inc. ("Citigroup" or the "Company") in this Court. The complaint of Plaintiff Harris was the first to be filed.

Pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, Plaintiff seeks to consolidate the above-captioned shareholder derivative actions and all later-filed related shareholder derivative actions involving nominal defendant Citigroup currently pending in the United States District Court for the Southern District of New York and appoint a leadership structure for Plaintiffs (the "Motion").

The following shareholder derivative actions (the "Related Actions") are currently pending before this Court:

| Abbreviated Case Name | Case Number | Date Filed |
|---|---|---|
| *Harris v. Prince, et al.* | 07-CV-9841 (SHS) | November 7, 2007 |
| *Cinotto v. Prince, et al.* | 07-CV-9900 (SHS) | November 8, 2007 |
| *Nathanson v. Prince, et al.* | 07-CV-10333 (JSR) | November 14, 2007 |
| *Cohen v. Citigroup, Inc., et al.* | 07-CV-10344 (SHS) | November 15, 2007 |
| *Ryan v. Prince et al.* | 07-CV-11581 (UA) | December 26, 2007 |

The Related Actions name a majority of common defendants and contain substantially similar allegations and causes of action. Each complaint alleges that defendants breached their fiduciary duties to Citigroup in connection with the reckless purchasing of subprime loans, which has caused substantial losses to the Company. Each complaint seeks to recover these losses on behalf of Citigroup.

Given the similarities, to facilitate judicial economy and ensure the orderly prosecution of these claims, Plaintiff requests that this Court enter the contemporaneously filed [Proposed] Order granting Plaintiff's Motion to Consolidate all Related Shareholder Derivative Actions and Appoint a Leadership Structure for Plaintiffs ("[Proposed] Order") that: (1) consolidates the Related Actions; (2) appoints Harris as Lead Plaintiff; and (3) appoints Robbins Umeda & Fink, LLP ("RUF") and the Law Offices of Thomas G. Amon (the "Amon Firm") as Co-Lead Counsel.

The [Proposed] Order submitted herewith establishes a leadership structure for the Related Actions which provides for the coordination of service of notices and orders of this court, the filing of a consolidated complaint and the consolidation of all future related actions. Thus, the [Proposed] Order will eliminate duplicative effort, coordinate Plaintiffs and promote the efficient prosecution of the Related Actions.

II.     **ARGUMENT**

   A.     **Consolidating All Related Actions Will Promote Judicial Economy**

Consolidation is a "valuable and important tool of judicial administration." *Consorti v. Armstrong World Indus., Inc.*, 72 F.3d 1003, 1006 (2d Cir.1995), vacated on other grounds, 518 U.S. 1031 (1996). The authority to consolidate lawsuits is found in the Federal Rules of Civil Procedure: "When actions involving a common question of law or fact are pending before the court, it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay." Fed. R. Civ. P. 42(a).

The district court has broad discretion to determine whether consolidation is appropriate. *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284-1285 (2d Cir.1990); *Devlin v. Transp. Commc'n Int'l Union*, 175 F.3d 121, 130 (2d Cir.1999). Indeed, courts generally default to consolidate actions where judicial economy is concerned. *Johnson*, 899 F.2d at 1284 (finding that "courts have taken the view that considerations of judicial economy favor consolidation"); *Bank of Montreal v. Eagle Assocs.*, 117 F.R.D. 530, 532 (S.D.N.Y.1987) ("[C]onsiderations of judicial economy strongly favor simultaneous resolution of all claims growing out of one event.") (citations omitted). Rule 42 is "invoked to expedite trial and eliminate unnecessary repetition and confusion." *Delvin*, 175 F.3d at 130 (citations omitted). Further, consolidation serves to prevent separate actions from producing conflicting results. *OHM Remediation Servs. Corp. v. Hughes Envt'l Sys., Inc.*, 952 F.Supp. 120, 121 (N.D.N.Y.1997) (citing *Bank of Montreal v. Eagle Assocs.*, 117 F.R.D. at 533).

In sum, consolidating these Related Actions will serve judicial efficiency by preventing unnecessary duplication of efforts, including briefing and arguing motions, initiating and conducting pretrial discovery, employing experts, arranging for support services and coordinating the massive task of evidence and document retention. *See* Moore's Federal Practice §§20-22 (3rd Ed. 1995). Thus, the interests of the parties are best served by the efficiency, consistency and economy achieved through consolidation.

### B.  This Court Should Appoint a Leadership Structure for Plaintiffs

In complex cases such as this one, it is well established that the court may appoint a plaintiff leadership structure to coordinate the prosecution of complex litigation. *MacAlister v. Guterma*, 263 F.2d 65, 68 (2d Cir. 1958) ("An order consolidating such [derivative actions] during the pre-trial stages, together with the appointment of a general counsel, may in many instances prove the only effective means of channeling the efforts of counsel ..."); *In re Bendectin Litig.*, 857 F.2d 290, 297 (6th Cir. 1988); *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 774-75 (9th Cir. 1977); *In re Air Crash Disaster at Fla. Everglades*, 549 F.2d 1006, 1014-15 (5th Cir. 1977). Likewise, the utility in appointing lead counsel in complex actions such as this one is well recognized. As stated by one court:

> The benefits achieved by consolidation and the appointment of general counsel, *i.e.*, elimination of duplication and repetition and in effect the creation of a coordinator of diffuse plaintiffs through whom motions and discovery proceedings will be channeled, will most certainly redound to the benefit of all parties to the litigation. The advantages of this procedure should not be denied litigants in the federal courts because of misapplied notions concerning interference with a party's right to his own counsel.

*MacAlister*, 263 F.2d at 69. In addition, the *Manual for Complex Litigation Fourth* ("MCL 4th") recognizes the benefits of promptly appointing a leadership structure of plaintiffs' counsel in complex multi-party litigation. *See* MCL 4th §22.62.

In light of the above, this Court should appoint a leadership structure for the consolidated action.

### C.    The Court Should Appoint Movants' Proposed Leadership Structure

The [Proposed] Order submitted by Plaintiff seeks to appoint Harris, an experienced litigator, as Lead Plaintiff and RUF and the Amon Firm as Co-Lead Counsel for plaintiffs in the consolidated action, a leadership structure that will efficiently manage this complex action on behalf of all plaintiffs. Additionally, the proposed consolidated complaint to be filed with the court will promote the expeditious resolution of pleading matters, since any motions directed to the pleadings will be heard on a single hearing date to be set by the Court and will relate to only one complaint, instead of the current structure requiring defendants to file identical motions and requiring unnecessary and inefficient duplicative briefing. Such procedures will not only simplify the presentation of any issues desired to be raised by the defendants concerning the sufficiency of the complaint, but will also avoid further duplicative motions and hearings and unnecessary delay in the resolution of such issues. Entry of the [Proposed] Order will therefore assist the Court by providing for the orderly, cost effective and timely prosecution of the consolidated action.

Courts generally begin their analysis of who should lead this type of litigation with the plaintiff or plaintiffs who were first to file. *See Biondi v. Scrushy*, 820 A.2d 1148, 1159 (Del. Ch. 2003) (the "first-filed factor typically becomes decisively important only when: (1) a consideration of other relevant factors does not tilt heavily in either direction and there is a need

for an objective tie-breaker..."); *see also Armstrong v. Doyle*, 20 Misc. 2d 1087, 1088-89 (N.Y. Super. Ct. 1959) (noting that in designating lead counsel in a derivative action, the court should consider the "wishes of the one who first brought suit" while ultimately making its decision on the basis of the competency and experience of the attorneys). Plaintiff Harris was first to file. Therefore, Plaintiff is entitled to the "tie-breaker."

Courts then often employ the following common sense factors in determining whether that leadership structure will be most beneficial for plaintiffs: (1) the quality of the pleadings; (2) the vigorousness of the prosecution of the lawsuits; and (3) whether the plaintiffs are represented by capable counsel. *Millman ex. rel. Friedman's, Inc. v. Brinkley*, No. 1:03-CV-3831-WSD, 2004 WL 2284505, at *3-*4 (N.D. Ga. Oct. 1, 2004); *Dollens v. Zionts*, No. 01-C-5931, 2001 WL 1543524, at *4-*6 (N.D. Ill. Dec. 4, 2001). Here, a consideration of any or all three of these factors strongly supports appointing Plaintiff's proposed leadership structure.

### 1. Plaintiff's Pleadings Are of High Quality

Plaintiff's complaint is a detailed pleading that bring federal and state causes of action against certain officers and directors of Citigroup and thoroughly pleads with particularity why demand on Citigroup's board of directors would have been a futile and useless act. The 45 page, 117 paragraph complaint brings five causes of action against thirty defendants. Plaintiff's complaint details breaches of fiduciary duties, insider trading allegations and violations of federal securities laws. There are prayers for important corporate governance reforms. Additionally, Plaintiff has filed these well-reasoned proposed leadership structure papers to best serve the interests of Citigroup. Plaintiff's pleadings have been of high quality. This high quality supports Plaintiff's motion to appoint their proposed leadership structure to litigate the Consolidated Action.

### 2. Plaintiff Has Been Active in Prosecuting This Action

As discussed above, Plaintiff and his counsel have already demonstrated their interest and vigorousness in prosecuting the Consolidated Action. See Declarations of Plaintiff Jeffrey Harris in Support of Motion to Consolidate All Related Shareholder Derivative Actions and Appoint a Leadership Structure for Plaintiffs ("Harris Decl."). Plaintiff is an experienced litigator who has,

in the course of his practice, overseen teams of lawyers actively litigating cases. Harris Decl. ¶ 6. Indeed, Plaintiff's swiftly and first-filed detailed complaints on behalf of Citigroup alleges violations of federal securities laws as well as breach of fiduciary duty and other state law claims. Moreover, Plaintiff has sought to consolidate the Related Actions in the interests of judicial efficiency and have proposed a qualified leadership structure to pursue this litigation in the best interests of the Company. It is clear that counsel for Plaintiff have been vigorously litigating his claims, and this factor therefore weighs in favor of appointing Plaintiff's proposed leadership structure.

### 3.     Plaintiff's Counsel Are Highly Qualified

Finally, Plaintiff's proposed Co-Lead Counsel are highly competent and have extensive trial and complex litigation experience, including the prosecution and trial of shareholder derivative actions. *See* Declaration of Thomas G. Amon ("Amon Decl."). The experience and prior success record of the attorneys at both the Amon Firm and RUF unquestionably demonstrate their competence to lead this litigation. *See In re Terazosin Hydrochloride*, 220 F.R.D. 672, 702 (S.D. Fla. 2004) (finding the proposed counsel's "experience in, and knowledge of, the applicable law in this field" the "most persuasive" factor when choosing lead counsel); *In re Cardinal Health, Inc. ERISA Litig.*, 225 F.R.D at 552, 555, 558-59 (S.D. Ohio 2005).

The Amon Firm is a New York based law firm representing companies, executives and shareholders in litigation and corporate transactions. Amon Decl., ¶ 3-5. With over 110 years of combined experience, the Amon Firm offers its' clients a unique perspective and knowledge base. *Id.* The firm has recouped millions of dollars on behalf of shareholders in complex securities fraud class actions and shareholder derivative actions. *Id.* Specifically, the Amon Firm was appointed as Co-Lead Counsel in *DHB Indus.*, recommended by United States Magistrate Judge E. Thomas Boyle and adopted by United States District Judge Joanna Seybert. Amon Decl., ¶ 3. In short, the lawyers of the Amon Firm are more than qualified to lead this litigation. For a more detailed description of the qualifications and experience of the Amon Firm, *see* Exhibit A to Amon Decl.

Additionally, the lawyers of RUF are likewise more than qualified to lead this litigation, as evidenced by their quality of representation in this litigation and their extensive experience in the area of shareholder derivative litigation. *See* Amon Decl., ¶¶ 7-9. Brian J. Robbins of RUF, who holds an LLM in Securities and Financial Regulation from the Georgetown Law Center, has been an active litigator of shareholder rights for several years. Amon Decl. at ¶ 7. For example, Mr. Robbins was the lead negotiator for the derivative plaintiffs in *Harbor Finance Partners v. McGhan*, *et al.*, No. H-02-0761 (S.D. Tex.), litigation filed on behalf of Hanover Compressor Company. *Id.* The Hanover settlement resulted in, among other things, a $26.5 million payment to the Company, the return of 2.5 million shares to the Company, the appointment of two shareholder nominated directors and the agreement to rotate the Company's auditing firm. *Id.* This settlement was groundbreaking in the area of corporate governance reform. Additionally, Mr. Robbins, as sole lead counsel, recently settled *In re OM Group Derivative Litig.*, Case No. 1:03CV0020 (N.D. Ohio). As part of this resolution, Mr. Robbins helped secure $29 million for the Company, the termination of the Company's long term CEO, the addition of two shareholder nominated directors, and numerous other highly beneficial corporate governance matters. *Id.*

George Aguilar, a RUF partner who will be working on this case, recently joined the firm after a 17-year career as a federal prosecutor. Amon Dec. at ¶ 8. Mr. Aguilar investigated, prosecuted and tried numerous important cases as an Assistant United States Attorney at the United States Attorney's Office in San Diego. *Id.* He led grand jury investigations which resulted in indictments and trials of complex white collar criminal cases, such as corporate, securities, bank, investor, tax, foreign currency and bankruptcy fraud, bank bribery and money laundering. *Id.* His trial work resulted in important convictions in *United States v. Heffner*, one of the largest bank bribery offenses ever committed, *United States v. McCray*, a massive fraudulent foreign currency operation (resulting in the sentence of the operation's leader to a term of nearly 18 years) and *United States v. Scharnhorst* and *United States v. Simon*, bankruptcy and foreclosure relief scams defrauding numerous homeowners and creditors. *Id.* Mr. Aguilar tried more than 40 felony criminal trials to verdict, authored 35 Ninth Circuit Court of Appeals briefs and argued more than a dozen cases on appeal before the Ninth Circuit. *Id.* For his work, Mr.

Aguilar received several awards of recognition from the United States Department of Justice and federal agencies, including receiving the prestigious Executive Office for U.S. Attorneys Director's Award. *Id.*

RUF has also secured outstanding beneficial recoveries for shareholders in complex actions in the past. For example, RUF was one of the lead counsel in *In re Tenet Healthcare Corp. Derivative Litig.*, Lead Case No. 01098905 (Santa Barbara Super. Ct.), a shareholder derivative action in Santa Barbara Superior Court. *Id.*, ¶ 9. RUF's efforts resulted in a $51.5 million recovery for the company to be paid by the individual defendants and substantial corporate governance changes to be implemented and maintained by the company. *Id.* Additionally, in a recent securities fraud class action in San Diego, *In re Titan, Inc. Sec. Litig.*, Master File No. 04-CV-0676-LAB (NLS) (S.D. Cal.), RUF, serving as co-lead counsel, was able to secure a $61.5 million settlement on behalf of the class. *Id.*, ¶ 9. This amounted to half of the estimated damages to the class, far exceeding the normal settlement gained in this type of case. *Id.* For a more detailed description of the qualifications and experience of RUF, *see* Exhibit B to Amon Decl.

Furthermore, the Amon Firm and RUF have worked efficiently and cooperatively to date in this litigation in researching the facts underlying their actions, in developing the allegations in the complaint. These law firms also worked efficiently and cooperatively in several other matters, including, *DHB Indus.,* mentioned above. The Amon Firm and RUF are therefore clearly adequate to lead the litigation of the Consolidated Action on behalf of plaintiffs. *See DHB Indus.,* Report and Recommendation at 26-27 (adopted in full by United States District Judge Joanna Seybert on January 31, 2006) (in appointing Co-Lead Counsel, the Court determined, "[t]he legal team assembled- consisting of two law firms- the Law Offices of Thomas Amon and the firm of Robbins Umeda [& Fink]- have extensive experience in class actions and in pursuing shareholder derivative actions in New York and elsewhere…").

Appointment of RUF and the Amon Firm at this early stage of the litigation will ensure that the litigation has the necessary leadership structure in place to move matters forward in a diligent and efficient fashion.

**III.    CONCLUSION**

In the interests of judicial economy and for the reasons set forth above, Movants respectfully request that the court appoint their proposed leadership structure and enter the [Proposed] Order filed concurrently herewith.

DATED:  January 17, 2008                    LAW OFFICES OF THOMAS G. AMON
                                            THOMAS G. AMON


                                            _____*s*/Thomas G. Amon_____
                                            THOMAS G. AMON (TGA-1515)

                                            500 Fifth Avenue, Suite 1650
                                            New York, N.Y. 10110
                                            Telephone: (212) 810-2431
                                            Facsimile:  (212) 810-2427

                                            ROBBINS UMEDA & FINK, LLP
                                            BRIAN J. ROBBINS
                                            GEORGE AGUILAR
                                            SHANE P. SANDERS
                                            610 West Ash Street, Suite 1800
                                            San Diego, CA 92101
                                            Telephone: (619) 525-3990
                                            Facsimile:  (619) 525-3991

                                            Attorneys for Plaintiff

311869_2