**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JEFFREY HARRIS, derivatively on behalf of Citigroup Inc., <br> v. <br> CHARLES O. PRINCE, ET AL., <br> Defendants. | 1:07-cv-09841-SHS |
| GARY CINOTTO, derivatively on behalf of Citigroup Inc., <br> v. <br> CHARLES O. PRINCE, ET AL., <br> Defendants. | 1:07-cv-09900-SHS |
| BENJAMIN NATHANSON, derivatively on behalf of Citigroup Inc., <br> v. <br> CHARLES O. PRINCE, ET AL., <br> Defendants. | 1:07-cv-10333-SHS |
| SAM COHEN, derivatively on behalf of Citigroup Inc., <br> v. <br> CITIGROUP INC., ET AL., <br> Defendants. | 1:07-cv-10344-SHS |
| WALTER E. RYAN, JR., derivatively on behalf of Citigroup Inc., <br> v. <br> CHARLES O. PRINCE, ET AL., <br> Defendants. | 1:07-cv-11581-UA |

**PLAINTIFF SAM COHEN'S MEMORANDUM OF LAW IN OPPOSITION TO COMPETING MOTIONS TO APPOINT LEAD COUNSEL AND IN FURTHER SUPPORT OF PLAINTIFF SAM COHEN'S MOTION FOR LEAD COUNSEL**

**CONTENTS**

TABLE OF CONTENTS...........................................................................i

TABLE OF AUTHORITIES..................................................................ii

I.    INTRODUCTION........................................................................1

II.   PROCEDURAL HISTORY RELEVENT TO THIS MOTION.......................5

III.  ARGUMENT.............................................................................7

    A.  Counsel For Harris, Nathanson and Cinotto Suffers From Grave Conflicts.........8

    B.  Multiple And Out Of State Counsel Are Unnecessary In This Action...................16

    C.  This Court Should Appoint Brower Piven As Lead Counsel For The...............17
       Consolidated Derivative Actions

IV.   CONCLUSION..................................................................19

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Almonte v. City of Long Beach*, No. 04-cv-4192,
2007 U.S. Dist. LEXIS 21782 (E.D.N.Y. Mar. 27, 2007)................................12

*In re Austrian And German Bank Holocaust Litigation*,
317 F.3d 91 (2d Cir. 2003) ........................................................................8

*Beck v. Status Game Corp.* No. 89-c 1995 U.S. Dist. LEXIS 9978
(S.D.N.Y. 1995) ......................................................................................16

*Brame v. Lefkowitz*, 85 F.R.D. 568 (N.D.N.Y. 1979)........................................12

*In re Comverse Tech. Inc. Derivative Litig.*, No. 06-cv-1849-NGG,
2006 U.S. Dist. LEXIS 94235 (E.D.N.Y. Sept. 26, 2006) ...............................8

*DiRienzo v. Phillip Services Corp.*, 232 F.3d 49 (2d Cir. 2000) .........................7

*In re Doral Finance Corp. Sec. Litig.*, No. 05-mdl-1706-(RO), 2006 U.S. Dist.
LEXIS 24647 (S.D.N.Y. Apr. 27, 2006) ....................................................7, 8

*Eastman Kodak Co. v. Sony Corp.*, No. 04-cv-6095, 2004 U.S. Dist. LEXIS 29883
(W.D.N.Y. Dec. 27, 2004)..........................................................................10

*In re Frontier Ins. Group Inc. Sec. Litig.*, 172 F.R.D. 31 .................................15

*Howard Gunty Profit Sharing Plan v. Carematrix Corp.*,
354 F. Supp. 2d 18 (D. Mass. 2000)...........................................................16

*MacAlister v. Guterma*, 263 F.2d 65 (2d Cir. 1958)...........................................7

*In re Maywalt v. Parker Parsley Petroleum Co.*, 67 F.3d 1072 (2d Cir. 1995) ...........8, 15

*In re Milestone Scientific Sec. Litig.*, 187 F.R.D. 165 (D.N.J. 1999) ...........15, 16

*In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803 (N.D. Ohio 1999)...............17

*Thyroff v. Nationwide Mutual Ins. Co.*, No. 00-cv-6481T, 2004 U.S. Dist.
LEXIS 12946 (W.D.N.Y. July 1, 200).........................................................9

*United States v. Nabisco*, 117 F.R.D. 40 (E.D.N.Y 1987) ................................10

*Vincelli v. National Home Health Care Corp.*, 112 F. Supp. 2d 1309
(M.D. Fla. 2000) ......................................................................................17

*Yousefi v. Lockheed Martin Corp.*, 70 F. Supp. 2d 1061 (C.D. Cal. 1999) ........................17

## STATE CASES

*Graubard Mollen Dannett & Horowitz v. Moskovitz*,
86 N.Y.2d 112 (N.Y.1995) ........................................................................................12

*Ulico Casualty Co. v. Wilson, Elser, Moskowitz, Edelman & Dicker*,
843 N.Y.S.2d 749 (N.Y. Sup. Ct. 2007) ....................................................................12

## DOCKETED CASES

*Cinotto v. Prince, et al.*, No. 07-cv-9900- (SHS) ..............................................................5

*Cohen v. Citigroup, Inc., et al.*, No. 07-cv-10344- (SHS) ................................................5

*In re DHB Industries, Inc. Derivative Litig.*, No. 05-cv-4345 (JS)(ETB) ........................14

*Harris v. Prince, et al.*, No. 07-cv-9841- (SHS) ................................................................5

*In re Initial Public Offering Sec. Litig.*, 21 MC 92 (S.D.N.Y.) ......................................18

*In re Merck & Co, Securities, Derivative & ERISA Litigation*,
MDL No. 1658 (D. N.J.) ..............................................................................................18

*Nathanson v. Prince, et al.*, No. 07-cv-103330- (JSR) ......................................................5

*Plumbers and Pipefitters Local 51 Pension Fund v. First Bancorp.*
No. 05-cv-9379-JSR (S.D.N.Y.) ..................................................................................14

*Ryan v. Prince et al.*, 07-cv-11581-(UA) ........................................................................5

*In re Sotheby's Holding, Inc. Securities Litigation*, No. 00 Civ. 1041 (S.D.N.Y.) ..........19

*In re Symbol Technology Derivative Litigation*, No. 05-cv-04536-DRH-WDW
(E.D.N.Y.) ..................................................................................................................14

## FEDERAL STATUTES

Fed. R. Civ. P. 23 .................................................................................................1, 4, 8

Fed. R. Civ. P. 41(a)(1) ..............................................................................................14

Fed. R. Civ. P. 42(a) ..................................................................................................1

## MISCELLANEOUS

*Moore's Federal Practice*, §23.192[1][a] (3d ed. 2007) ...............................................8, 16

*New York's Code of Professional Responsibility*
   DR 5-105[D][22 NYCRR 1200.24(a-c)] .................................................................9, 10

## I.    **INTRODUCTION**

Plaintiff, Sam Cohen, respectfully submits this memorandum of law in support of his motion to consolidate, pursuant to Fed. R. Civ. P. 42(a), all related shareholder derivative actions involving defendant Citigroup Inc. ("Citigroup"), pending in the United States District Court for the Southern District of New York,[1] and to appoint the law firm of Brower Piven, A Professional Corporation ("Brower Piven"), as lead counsel for plaintiffs.

There are now five competing motions before this Court to appoint, variously, five different proposed plaintiffs' leadership organizations. As demonstrated below, and in plaintiff Cohen's prior memorandum,[2] not only is Mr. Cohen the most adequate and appropriate shareholder derivative plaintiff under Fed. R. Civ. P. 23.1, based on the length of time he has held Citigroup commons stock,[3] and his New York City-based counsel the most experience in prosecuting securities and shareholder derivative actions, but three of the proposed plaintiffs and their counsel have now, based on the face of their competing motions, disqualified themselves from serving in any representative role in this litigation.

Plaintiffs Jeffrey Harris, Benjamin Nathanson and Gary Cinotto are all competing with each other to lead this Action and choose the counsel structure to prosecute it. Accordingly, each

---

[1] All movants agree that consolidation of all five related shareholder derivative actions, which allege substantively identical claims, for all purposes is appropriate. Accordingly, the Court should consolidate the cases. (The five related actions are collectively referred to herein as the "Action").

[2] *See* Memorandum Of Law In Support Of Plaintiff Sam Cohen's Motion To Consolidate All Related Shareholder Derivative Actions And Appoint A Lead Counsel, dated Jan. 28, 2008 ("Cohen Opening Memorandum" or "Cohen Opening Mem.")

[3] *See* Second Declaration Of Elizabeth A. Schmid In Support Of Plaintiff Sam Cohen's Memorandum Of Law In Opposition To Competing Motions And In Further Support Of Plaintiff Sam Cohen's Motion To Consolidate All Related Actions And To Appoint Lead Counsel, dated February 4, 2008) ("Second Schmid Decl."), Exhibit A (the "Declaration of Sam Cohen").

has filed papers seeking to demonstrate his respective superiority to the other movants. Shockingly, all three of these competing motions were signed and filed by the same lawyer who purports to represent these battling plaintiffs -- Thomas Amon. Mr. Amon's attempt here to be all things to all people has resulted in him being unable -- as a matter of law -- to be anything to anyone in this Action.

Violating well-established ethical rules, Mr. Amon first filed suits here for three separate clients with different co-counsel. Then, Mr. Amon cherry-picked from among his three clients, offering one of them, Mr. Harris, as the proposed "lead plaintiff" and himself as proposed co-lead counsel for all of the related actions. It is now clear from the subsequent fallout, that Mr. Amon did not obtain prior consent from his other two clients before promoting the interests of Mr. Harris over those of Messrs. Nathanson and Cinotto. Indeed, the circumstantial evidence strongly suggests that Mr. Amon did not even inform Messrs. Nathanson and Cinotto or his out-of-town co-counsel of his plan to support Mr. Harris and Robbins Umeda & Fink LLP ("Robbins Umeda") over them before he signed and filed Mr. Harris' motion.

Having put himself in this untenable situation, Mr. Amon then made another fatal error: he filed two competing motions as counsel for Messrs. Nathanson and Cinnotto against his client Mr. Harris, but, of course, seeking in each to have himself appointed to a leadership position. Thus, Mr. Amon is now representing three different clients who seek to have the Court choose from among them and their three competing proposed leadership structures, where, irrespective of which of his battling clients prevails, Mr. Amon proposes to split the leadership between himself and one or another far-flung out-of-state attorney. Mr. Amon's heads I win, tails you lose strategy is inconsistent with the proper conduct of an attorney seeking to represent multiple

2

clients in litigation and the remedy is mandatory: Mr. Amon must immediately withdraw entirely from this Action.

Moreover, even absent the clear conflicts of interest that Mr. Amon faced and resolved in his own favor, Mr. Amon's multiple client representation has burdened this Court with three separate competing motions for three different clients each seeking for themselves the same relief that has multiplied and complicated the proceedings – the mirror opposite of what lead counsel is expected to do. That Mr. Amon was unable to conclude some agreement between his three clients before filing competing motions on behalf of all of them demonstrates that he lacks the experience or capability to efficiently or effectively manage a complex, multiparty shareholder action such as this Action. Mr. Amon's lack of relevant leadership experience in cases of this type may well explain the reason much of the "qualifications" listed in his declarations and firm resume are incomplete or incorrect. In any event, given the size and importance of this Action, and his conduct here to date, Mr. Amon cannot be entrusted with the interests of Citigroup and its shareholders.

Mr. Amon's conduct has also so tainted his co-counsel and his clients, that none of them may now serve in a fiduciary or managerial role here. Due to the decision of Messrs. Harris, Cinotto and Nathanson to retain various out-of-town attorneys, without Mr. Amon, they have no New York counsel; until that situation is rectified, none of them can prosecute this case. More fundamentally, based on the circumstances here, it is clear that at the outset, Messrs. Cinotto and Nathanson did not know what Mr. Amon was doing to promote Mr. Harris' interest over their own, until, at the earliest, when Mr. Amon filed papers supporting Mr. Harris. Having learned what Mr. Amon had done through his filing the motion to have Mr. Harris appointed the "lead plaintiff" over them, Messrs. Cinotto and Nathanson then moved on their own to trump Mr.

Harris – in papers, unbelievably, also signed and filed by Mr. Amon.  However, once these plaintiffs learned that Mr. Amon had acted in a manner inconsistent with their interests -- a fact alone demonstrated by their competing motions -- these plaintiffs were obliged to retain new counsel.  Instead, they continued with Mr. Amon and thereby contributed to his additional violations of his duties to Mr. Harris as well as alternately to each of them.  As if their apparent willingness to turn a blind eye to Mr. Amon's improper conduct were not reason enough to disqualify them, Messrs. Harris, Cinotto and Nathanson have all graphically demonstrated that neither they nor their out-of-town co-counsel can properly control counsel and, thus, adequately manage this Action.  Rather, when faced with the problems created by Mr. Amon's multiple representation in this case, not only did they fail to take steps to remedy it, they compounded those problems.  Accordingly, none of them is an adequate shareholder derivative representative under Fed. R. Civ. P. 23.1(a).

Moreover, as of this time, none of the plaintiffs competing with plaintiff Cohen has even attempted to demonstrate the length of time he has continuously held Citigroup shares.  Continuous ownership of those shares – as of now apparently at least back to 2000, is a *sine quo non* of standing to pursue this case.  *See* Fed. R. Civ. P. 23.1(b).  Nevertheless, none of the other plaintiffs felt obliged to provide that critical piece of evidence to support their respective motions with a showing that they can even assert all of the potential claims here.  Rather, all of the competing motions focus almost entirely on the resumes of counsel, and to call them "lawyer-driven" would be a vast understatement.

Finally, with respect to the two most recent competing motions filed by Messrs. Cinatto and Nathanson, in addition to their fatal decision to continue with Mr. Amon, like Messrs. Harris and Ryan before them, they offer the Court a cumbersome, multi-lawyer, multi-layer leadership

4

structure led by counsel located in Cleveland, Ohio and San Diego, California who are hundreds and thousands of miles away from this District. As plaintiff Cohen's Opening Memorandum discusses, the interests of efficiency, and economy strongly favor a single, experienced and capable lead counsel actually located in the district in which this Action is pending and only plaintiff Cohen has proposed that to the Court.

## II.    PROCEDURAL HISTORY RELEVENT TO THIS MOTION

On November 7, 2007, the first of these related actions, *Harris v. Prince, et al.,* No. 07-cv-9841-(SHS), was filed in this Court by plaintiff Harris represented by the San Diego firm of Robbins Umeda and Thomas Amon. On November 8, 2007, the second action, *Cinotto v. Prince, et al.,* No. 07-cv-9900-(SHS), was filed by plaintiff Cinotto represented by the San Diego firm of Johnson Bottini, LLP ("Johnson Bottini") and Thomas Amon. On November 14, 2007, the third action, *Nathanson v. Prince, et al.,* No. 07-cv-10333-(JSR), was filed by plaintiff Nathanson represented by the Cleveland, Ohio firm of Landskroner Greico Madden, Ltd., ("Landskroner") and Thomas Amon. On November 15, 2007, the fourth action, *Cohen v. Citigroup, Inc., et al.,* No. 07-cv-10344-(SHS), was filed by plaintiff Cohen represented by the New York City-based firm of Brower Piven. On December 26, 2007, the fifth action, *Ryan v. Prince et al.,* 07-cv-11581-(UA), was filed by plaintiff Ryan, represented by the Chicago, Illinois firm of Krislov & Associates, Ltd. ("Krislov") and Faruqi & Faruqi, LLP.

On January 17, 2008, plaintiff Ryan, without consulting the other plaintiffs that had filed related actions, unilaterally filed a motion seeking to have himself appointed the "lead plaintiff" and his Chicago-based counsel appointed sole lead counsel. In response, on January 17, 2008, plaintiff Harris, also without consulting the other plaintiffs in advance, filed a competing motion to be appointed sole "lead plaintiff" and to have his counsel, San Diego-based Robbins Umeda

and Thomas Amon appointed co-lead counsel. On January 22, 2008, this Court issued an Order, *sua sponte*, directing that "any party other than [plaintiffs Harris and Ryan] who intends to move to consolidate these actions and appoint lead plaintiff and lead counsel shall do so by January 28, 2008. Any opposition to these motions shall be filed by February 4, 2008." Thus, whatever advantage plaintiffs Ryan and Harris may have hoped their precipitous filing of lead plaintiff/lead counsel appointment motions would give them, the Court determined to proceed with these issues in a more orderly fashion.

In response to the Court's January 22, 2008 Order, plaintiff Cohen, recognizing that there is no such thing as the position of "lead plaintiff" in shareholder derivative actions (a status limited to suits under the Private Securities Litigation Reform Act of 1995 ("PSLRA")), provided reasons, based on the merits of the claims in this Action and his standing as a derivative plaintiff, why he should be designated to lead the Action, and why his counsel, New York City – based Brower Piven, should be appointed lead counsel.

In addition, on January 25, 2008, and January 28, 2008, respectively, Mr. Amon's other two clients, plaintiffs Cinotto and Nathanson, each filed separate motions to appoint their respective out-of-state attorneys as sole lead counsel (San Diego's Johnson Bottini for Mr. Cinotto and Cleveland's Landskroner for Mr. Nathanson), but both moved for appointment of Mr. Amon, their only New York counsel, as their respective "liaison counsel." Mr. Amon also signed and filed both of these competing motions.

Nowhere in the moving papers have Messrs. Cinotto or Nathanson, their respective out-of-state counsel, or Mr. Amon explained how Mr. Amon came to support Mr. Harris as sole "lead plaintiff" and Mr. Harris' choice of Robbins Umeda as co-lead counsel with Mr. Amon, or how their conflicting motions can now be harmonized with Mr. Amon's (albeit incorrect)

6

argument that Mr. Harris is superior to the other plaintiffs, including his other clients, Messrs. Cinotto and Nathanson. Mr. Amon also has provided no evidence that he: (1) obtained the prior consent of Messrs. Cinotto and Nathanson to file the initial motion for Mr. Harris; (2) obtained the prior consent of Messrs. Harris and Nathanson to file a competing motion for Mr. Cinotto; or (3) obtained the prior consent of Messrs. Harris and Cinotto to file a competing motion for Mr. Nathanson.

This then is the unfortunate procedural posture of the motions before this Court. Mr. Amon has created a tangled web of conflicts for himself and between and among his multiple clients. All that is left is for Mr. Amon must withdraw and the motions of plaintiffs Harris, Nathanson and Cinotto, who have clearly demonstrated that they are unable to select competent counsel and control the counsel they do select, to be denied.

## III.   **ARGUMENT**

As demonstrated in plaintiff Cohen Opening Memorandum, at pp. 5, there is no notion of a "lead plaintiff" in shareholder derivative actions; that status is a creation of the PSLRA, which does not apply to this Action. *See e.g., DiRienzo v. Phillip Servs. Corp.*, 232 F.3d 49, 61-2 (2d Cir. 2000). However, it is well-settled that the Court should appoint lead counsel to ensure the efficient, economical prosecution of the litigation in the best interest of the corporation and its shareholders. *See In re Doral Fin. Corp. Sec. Litig.*, No. 05-mdl-1706-(RO), 2006 U.S. Dist. LEXIS 24647, at *7-9 (S.D.N.Y. Apr. 27, 2006) (citing *MacAlister v. Guterma*, 263 F.2d 65, 68-9 (2d Cir. 1958)).

The Court employs an analysis of the following factors to determine whether lead counsel should be appointed for plaintiffs: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge

of the applicable law; and (4) the resources counsel will commit to representing the class." *See*
Cohen Opening Mem. at 5; *see also* Fed. R. Civ. P. 23(g)(1)(C)(ii); "No single factor is
necessarily determinative in a given case. The court must weigh all pertinent factors." *In re
Comverse Tech, Inc., Derivative Litig.,* No. 06-cv-1849-(NGG), 2006 U.S. Dist. LEXIS 94235
(E.D.N.Y. Sept. 26, 2006).

Plaintiff Cohen proposes a single, New York City-based lead counsel, Brower Piven,
which easily satisfies these criteria, and is the firm best suited to manage and prosecute this
Action. In contrast, the competing proposals of plaintiffs Harris, Ryan, Nathanson and Cinotto
fail to satisfy these criteria, and each of their proposed multi-layer structures that includes out of
state lead counsel is, at best, undesirable. *See In re Doral Fin. Corp. Sec. Litig.,* 2006 U.S. Dist.
LEXIS 24647, at *7-9 (declining to appoint co-lead counsel in shareholder derivative action and
instead finding single lead counsel appropriate to "coordinate the litigation and avoid
duplication.").

### A.    Counsel For Harris, Nathanson and Cinotto Suffers From Grave Conflicts

"Pursuant to Fed. R. Civ. P. 23(g)(1)(B), a court may consider any other matter that may
be pertinent to the applicant's ability to represent the class's interests fairly and adequately." *See*
Moore's Federal Practice §23.120[3][d][ii] (3d ed. 2007); *see also In re Austrian And German
Bank Holocaust Litig.* 317 F.3d 91, 104 (2d Cir. 2003)(citing *Maywalt v. Parker & Parsley
Petroleum Co.* 67 F.3d 1072, 1078 (2d Cir. 1995))("responsibility to ensure that the interests of
class members are not subordinated to the interests of either the class representatives or class
counsel rests with the district court.").

Mr. Amon is counsel to plaintiffs Harris, Cinotto and Nathanson. That he may have been
retained for these plaintiffs by their out-of-state counsel and that he may never have even spoken

to his clients does not alter his attorney-client relationship with his three, now competing clients, or lessen his obligations to each of them under the Code of Professional Responsibility. *See, e.g., Thyroff v. Nationwide Mutual Ins. Co.,* No. 00-cv-6481T, 2004 U.S. Dist. LEXIS 12946 (W.D.N.Y. July 1, 200) (refusing to make distinction between the obligations of local and out-of-state counsel for a party).

Mr. Amon, who was presumably retained by Mr. Harris first, should have refused employment from any other plaintiffs in this Action unless those proffered clients agreed they would not seek to compete with Mr. Harris to lead the litigation. Clearly, given that both Messrs. Nathanson and Cinotto are now competing for leadership of this Action through appointment of different lead counsel, Mr. Amon failed to do so. When Mr. Amon undertook representation of his next client, presumably Mr. Cinotto, the second plaintiff to file, he embarked on the slippery slope. By the time Mr. Amon agreed to also represent Mr. Nathanson, he was rolling down the hill. When he then filed motion papers compared the superiority of one of his clients over that of his other clients, he landed in the mud. As a result of his multiple representations of clients, as it was foreseeable from the outset of his retention that they would have conflicting interests in how this Action would be litigated and by whom, Mr. Amon should have declined the second representation. Once he accepted the second representation, his only choice was to withdraw entirely. Instead, to add insult to injury, after favoring one client over his other two clients, he then filed not one, but two separate competing motions putting him into conflict with all three of his clients.

New York's Code of Professional Responsibility provides that:

> A.    A lawyer shall decline proffered employment if the exercise of independent professional judgment on behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, or if it would be likely to involve the lawyer in representing differing

interests, except to the extent permitted under subdivision (c) of this section.

B.  A lawyer shall not continue multiple employment if the exercise of independent professional judgment on behalf of a client will be or is likely to be adversely affected by the lawyer's representation of another client, or if it would be likely to involve the lawyer in representing differing interests, except to the extent permitted under subdivision (c) of this section.

C.  In the situations covered by subdivisions (a) and (b) of this section, a lawyer may represent multiple clients if a disinterested lawyer would believe that the lawyer can competently represent the interest of each and if each consents to the representation after full disclosure of the implementations of the simultaneous representation and the advantages and risks involved.

Code of Professional Responsibility DR 5–105[D] [22 NYCRR 1200.24(a-c)].

There can be no dispute that Mr. Amon has flagrantly violated DR 5-105 (A) and (B). *Eastman Kodak Co. v. Sony Corp.*, No. 04-cv-6095, 2004 U.S. Dist. LEXIS 29883, at *13 (W.D.N.Y. Dec. 27, 2004) (citing *United States v. Nabisco*, 117 F.R.D. 40, 44 (E.D.N.Y 1987) ("Generally in cases where the movant establishes that a law firm is simultaneously employed by two or more adverse parties in the same action, such representation is deemed *prima facie* improper."). Moreover, Mr. Amon can find no cover for his actions under DR 5-105(C). Here, there is no evidence that Mr. Amon obtained prior consent from Mr. Harris to undertake representation of Mr. Cinotto, and prior consent from Messrs. Harris and Cinotto before undertaking representation of Mr. Nathanson. Further, there is no evidence that Mr. Amon obtained the prior consent of either Messrs. Cinotto or Nathanson before filing the initial "lead plaintiff" motion on behalf of Mr. Harris and, by virtue of the subsequent competing lead counsel motions filed by Messrs. Cinotto and Nathanson, the circumstantial evidence is that Mr. Amon did not.

Even in the unlikely event that Mr. Amon obtained such prior consent from all three clients to represent each of them against the others, he still cannot claim the protections of DR 5-105(C) because he affirmatively injured the position of his other clients in his quest to have Mr. Harris appointed "lead plaintiff" and his choice of co-counsel (including Mr. Amon) selected. In connection with Mr. Harris' motion, the memorandum, signed by Mr. Amon, states that because Mr. Harris is an "experienced litigator," he will make a superior "lead plaintiff." *See* Memorandum of Points And Authorities In Support Of Plaintiff Jeffrey Harris' Motion To Consolidate All Related Shareholder Derivative Actions And Appoint A Leadership Structure For Plaintiffs ("Harris Memorandum" or "Harris Memo"), at 5. Either Mr. Amon made the argument that an "experienced litigator" is a superior leader for this litigation (a proposition that Mr. Cohen takes issue with), in good faith or he did not. *See, e.g.,* DR 7-102 (A)(2), (5). Assuming he did, that argument significantly undercuts the positions of his other two clients, Messrs. Cinotto and Nathanson, who apparently are not "experienced litigators."

Additionally, Mr. Amon contends (also incorrectly) that being "first to file" renders Mr. Harris the superior candidate among all movants for "lead plaintiff" who should select lead counsel. *See* Harris Memo at 6 ("Plaintiff Harris was the first to file. Therefore, Plaintiff Harris is entitled to the 'tie-breaker'"). This statement in the Harris Memorandum, signed by Mr. Amon, undercuts the positions of his other clients, Messrs. Nathanson and Cinotto, who were not the "first to file." As a result, Mr. Amon has done the unthinkable – argued that his other clients are less adequate than Mr. Harris, the plaintiff who, perhaps coincidentally, seeks to have Mr. Amon appointed to the superior position of co-lead counsel rather than merely as New York liaison counsel for the other proposed out-of-state lead counsel.

11

As a result of the foregoing, Mr. Amon cannot claim the exception of DR 5-105(C), because he has not been a "disinterested lawyer" in the context of his three clients' competing motions. "[T]he New York Code prohibits a lawyer from continuing multiple employment … if it would be likely to involve the lawyer in representing differing interests." *Almonte v. City of Long Beach,* No. 04-cv-4192, 2007 U.S. Dist. LEXIS 21782, *at 11-12 (E.D.N.Y. Mar. 27, 2007). "The courts have repeatedly affirmed that 'an attorney stands in a fiduciary relation to the client.'" *Ulico Cas. Co. v. Wilson, Elser, Moskowitz, Edelman & Dicker,* 843 N.Y.S.2d 749, 1075 (N.Y. Sup. Ct. 2007) (citing *Graubard Mollen Dannett & Horowitz v. Moskovitz,* 86 N.Y. 2d 112, 118, (N.Y.1995)). "As a fiduciary, an attorney 'is charged with a high degree of undivided loyalty to his client.'" *Id.* (citations omitted). The representation of conflicting or adverse interests may constitute professional misconduct. *Id.* The facts here speak for themselves, and Mr. Amon must withdraw from this Action. Whether Mr. Amon chooses to withdraw or not, however, his violations of DR-105 render him incapable of serving as counsel in this representative action. *See, e.g., Brame v. Lefkowitz,* 85 F.R.D. 568, 577 (N.D.N.Y. 1979) ("This Court believes that the ethical competence of attorneys desiring to represent a class is relevant to the question of adequacy of representation.").

Furthermore, in connection with his attempts to support multiple competing clients with conflicting positions, while still seeking out some position for himself, Mr. Amon has put his own credibility into serious question. Mr. Amon has submitted two declarations to this Court, under penalty of perjury, that contradict each other. In the first declaration, Mr. Amon declared

to this Court that he supports the motion of plaintiff Harris.[4]  Specifically, Mr. Amon states that he supports Plaintiffs Harris' motion seeking appointment as lead plaintiff and requests that the Court appoint Mr. Amon's firm and Robbins Umeda as co-lead counsel.  *See* Amon Decl. Supporting Harris at 3 ¶2.  The second declaration, in direct contradiction to the first, states that Mr. Amon supports the motion of plaintiff Nathanson, a separate client, with interests adverse to those of plaintiff Harris, and sought to be appointed Mr, Nathanson's liaison counsel.[5]  Then, in a third motion to this Court, signed by Mr. Amon pursuant to his Fed. R. Civ. P. 11 obligations, he similarly contradicts the very words and purpose of the first two motions he filed , by seeking to be appointed as plaintiff Cinotto's liaison counsel, but with different lead counsel, Johnson Bottini.  *See* [Proposed] Order Granting Plaintiff Gary Cinotto's Motion To Consolidate All Related Shareholder Derivative Actions And Appoint Lead Counsel For Plaintiffs ("Cinotto Order"), at 2 ¶8.  Mr. Amon's multiple filings for different plaintiffs seeking different lead counsel (but all with him in the leadership) must have appeared to him as a mechanism to increase the odds that he would be appointed to some leadership position in this Action; however, that gambit, in fact, mandates that he not be appointed to a leadership position, and that he withdraw entirely.

Mr. Amon's zeal to have himself appointed to some leadership role here has also led him to submit information to the Court about his experience in shareholder litigation that is either so

---

[4] *See* Declaration of Thomas G. Amon In Support of Plaintiff Jeffrey Harris's Motion To Consolidate All Related Shareholder Derivative Actions And Appoint A Leadership Structure For Plaintiffs ("Amon Decl. Supporting Harris"), dated January 28, 2008.

[5] *See* Declaration of Thomas G. Amon In Support of Plaintiff Benjamin Nathanson's Motion To Consolidate All Related Shareholder Derivative Actions And Appoint A Leadership Structure For Plaintiffs ("Amon Decl. Supporting Nathanson"), dated January 28, 2008, at 3 ¶2.

incomplete as to render it misleading or outright false. For instance, Mr. Amon lists his firm's appointment as co-lead counsel and liaison counsel, respectively, in two recent cases. *See Amon Decl. Supporting Nathanson*, Ex. A, at 6; *Amon Decl. Supporting Harris*, Ex. B at 6. However, in *In re Symbol Tech. Derivative Litig.*, No. 05-cv-04536-DRH-WDW (E.D.N.Y.), Mr. Amon's firm was appointed as co-lead counsel by an agreed stipulation between counsel, and several months later the case was dismissed. *See* Docket #19, Joint Stipulation And [Proposed] Of Voluntary Dismissal. In addition, Mr. Amon claims his firm served as liaison counsel in *Plumbers and Pipefitters Local 51 Pension Fund v. First Bancorp. et al.*, No. 05-cv-9379-JSR (S.D.N.Y.), but he neglects to mention that case was also dismissed five months after the action was commenced without a recovery. *See* Docket Entry # 33, Notice of Voluntary Dismissal Pursuant to Fed. R. Civ. P. 41(a)(1).

Finally, in the Harris Memorandum, Mr. Amon claims his "firm has recouped millions of dollars on behalf of shareholders in complex securities fraud class actions and shareholder derivative actions. *Id.* Specifically, the Amon Firm was appointed as Co-Lead Counsel in [*In re*] *DHB Indus[tries, Inc. Derivative Litigation*, No. 05-cv-4345 (JS) (ETB)]....Amon Decl., ¶ 3." Harris Mem. at 7. The Harris Memorandum does not cite any cases for Mr. Amon other than *In re DHB Industries*. Aside from the fact that no resolution has been approved by the Court with respect to any of the related *DHB Industries* litigations before Judge Seybert, in part due to objections lodged by the United States Attorney General to the accompanying proposed class action settlement there, *see* Cohen Opening Mem. at 10 n.2, the proposed derivative settlement in *DHB Industries* provides for no cash or cash equivalent recovery for the shareholders or the company. *See In re DHB Indus. Inc. Derivative Litig.* No. 05-cv-4345(JS) (ETB), Docket Entry Nos. 102-106. The only recovery the settlement of that shareholder derivative action provides

14

for, assuming it is ever approved, is attorneys' fees for Mr. Amon and his proposed co-lead counsel here, Robbins Umeda, in exchange for assorted non-cash, corporate governance changes. How Mr. Amon can tout this result as "recoup[ing] millions of dollars on behalf of shareholders in . . . shareholder derivative actions" is, at best, mystifying.  Indeed, Mr. Amon's apparent lack of understanding of the results he claims he helped achieved in other cases merely confirms his lack of experience leading any shareholder litigation, and militates strongly against his appointment here.

By rotating his support for his different clients in competition with one another, Mr. Amon has also put into question his clients' ability to meet the most basic requirement of adequacy of a representative plaintiff in a shareholder derivative action.  As a result of his conduct, Mr. Amon has demonstrated that neither his co-counsel nor his clients have control over the litigation and, therefore, they should not be permitted to select counsel to lead this Action. Mr. Amon has already submitted three conflicting briefs on behalf of three separate clients that each seek to support separate and competing "lead counsel structures."  Either Mr. Amon has seized control of this litigation away from his clients, *see e.g., In re Milestone Scientific Sec. Litig.,* 187 F.R.D. 165, 176 (D.N.J. 1999) (It is well settled that any potential that a lead counsel applicant may attempt to seize control of the litigation must be avoided.), or his clients have lost all control over him. *See, e.g., In re Frontier Ins. Group Inc. Sec. Litig.,* 172 F.R.D. 31, 44 (S.D.N.Y. 1997) ("The court may properly deny class certification where the plaintiffs 'have so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys.") (citing *Maywalt v. Parker Parsley Pertroleum Co.* 67 F.3d 1072, 1077-78 (2d Cir. 1995)).  In either event, neither Mr. Amon, nor his clients, may act for shareholders in this Action, and their

competing motions should be denied. *See, e.g., Beck v. Status Game Corp.* No. 89-cv-2923, 1995 U.S. Dist. LEXIS 9978, at *19 (S.D.N.Y. 1995) (finding class representatives inadequate because of their lack of familiarity with the suit and the lack of control that they exercised over their attorneys.).

### B.    Multiple And Out Of State Counsel Are Unnecessary In This Action

"In exercising their authority to approve class counsel, the courts have taken an active role and have generally disapproved complex counsel structures in favor of selection of a single firm." *See Moore's Federal Practice*, §23.192[1][a] (3d ed. 2007). All plaintiffs, other than plaintiff Cohen seek the appointment of multiple plaintiffs' firms. None of the competing motions, however, even attempt to justify these cumbersome proposed structures, or the even more unnecessary and uneconomical inclusion of out of state counsel in those proposed structures. As discussed in the Cohen Opening Memorandum, duplicative services and increased attorneys' fees work against the approval of multiple lead counsel. *See Howard Gunty Profit Sharing Plan v. Carematrix Corp.,* 354 F. Supp. 2d 18, 25 (D. Mass. 2000) (declining to appoint more than one firm as lead counsel and finding that "[n]either firm ordinarily requires co-counsel to litigate such actions, and providing co-counsel in this instance is likely to complicate needlessly the mechanics of the litigation, including communication between lead plaintiffs and between attorneys for the plaintiffs and the defendants."); *see also In re Milestone Scientific,* 187 F.R.D. at 176 (D.N.J. 1999); Cohen Opening Mem. at 9 (citing cases).

Now, in addition to plaintiffs Harris and Ryan seeking to appoint multiple counsel that include out of state counsel, plaintiffs Nathanson and Cinotto also seek the appointment of multiple counsel including out-of-state counsel (located in distant Ohio and California, respectively). However, there is simply no need to appoint more than one law firm as lead

counsel in this litigation, or counsel located hundreds of miles from this District – and none of the other movants advocating that wasteful and duplicative proposal have justified doing so.[1] *See, e.g., In re Telxon Corp. Sec. Litig.,* 67 F. Supp. 2d 803, 817 (N.D. Ohio 1999) (declining to appoint co-lead counsel and additional liaison counsel); *Yousefi v. Lockheed Martin Corp.,* 70 F. Supp. 2d 1061, 1072 (C.D. Cal. 1999) (court appointed one firm as class counsel rather than three); *Vincelli v. Nat'l Home Health Care Corp.,* 112 F. Supp. 2d 1309, 1318-19 (M.D. Fla. 2000)(court appointed single firm class counsel).

Accordingly, the proposed "lead counsel structures" offered by the other movants should be rejected and plaintiff Cohen's proposal that Brower Piven, a New York City-based law firm, be appointed lead counsel, should be granted.

### C.    This Court Should Appoint Brower Piven As Lead Counsel

The attorneys at Brower Piven are the most experienced among the competing law firms in successfully managing and prosecuting large, complex shareholder derivative litigation. *See* Declaration of Elizabeth A. Schmid In Support of Plaintiff Sam Cohen's Motion For Consolidation Of All Related Actions And For Appointment Of Lead Counsel, ("First Schmid Decl."), dated January 28, 2007. The factors utilized by Courts in appointing lead counsel point towards appointing Brower Piven in this litigation. *See id.*

In particular, Mr. Brower, one of the firm's senior partners and the attorney at Brower Piven primarily responsible for this Action, has practiced in the areas of plaintiffs' securities, class action and shareholder derivative litigation since 1983. He has participated as lead or co-lead counsel in the successful prosecution of federal securities law class actions against, among others: Imperial Chemical Industries, Fifth Third Bancorp, Southmark Corporation, Ideal Basic

Industries, Bristol-Myers Squibb Companies, Tower Semiconductor, Gibson Greetings, Arakis Energy Corp., Scoreboard, Inc., Coastal Healthcare Corporation, Everest & Jennings International, B.T. Office Products, Profit Recovery, Enstar Corporation, Jennifer Convertibles, Inc., Warner Communications, Inc., Sambo's Restaurants, Sunrise Savings & Loan, Phillip Morris Companies, Bausch & Lomb, Nanophase Technologies, Ramada Inns, Michael Stores, Inc., Consumers Power Company, Broadwing/Cincinnati Bell, Compaq Computer Corporation, and Computer Associates.  Mr. Brower has participated as lead or co-lead counsel in the prosecution of merger litigation on behalf of, among others, public shareholders of Sheller Globe Corporation, Petro-Lewis Corporation, Floating Point Systems, Holnam Corporation, Wometco Enterprises, Inc., Great Bay Casinos Corp., Home Shopping Networks, MCA, Holly Sugar Company, and ARM Financial Group.  He also served as lead or co-lead counsel in shareholder derivative actions on behalf of shareholders of Banner Industries, Fairchild Corporation, Marsh & McLennan Companies and Merrill Lynch, Pierce, Fenner & Smith.

Since 2004, Mr. Brower has been one of the lead attorneys with day-to-day responsibility for the prosecution of the securities fraud claims in *In re Merck & Co, Securities, Derivative & ERISA Litigation*, MDL No. 1658, No. 2:05-CV-02367 (D. N.J.), an action where the damages to class members are estimated to be among the largest in the history of federal securities class litigation, and as lead counsel in the Maryland consolidated shareholder litigation challenging the proposed $38 billion take-over of Equity Office Properties Trust, one of the largest going-private transactions in business history.  Additionally, while a partner at his former firm, Mr. Brower was one of the attorneys with primary responsibility for class certification issues, including successfully arguing the class certification motion before the trial court, in *In re Initial Public Offering Securities Litigation*, 21 MC 92 (S.D.N.Y.), among the largest securities litigations ever

prosecuted, encompassing approximately 309 consolidated class action cases alleging market manipulation claims in connection with the initial public offering of securities by over 55 defendant underwriters. Mr. Brower also served as liaison counsel in *In re Sotheby's Holding, Inc. Securities Litigation*, No. 00 Civ. 1041 (S.D.N.Y.), which resulted in a recovery of over $75 million for Sotheby's investors. *See also* Schmid Decl. Ex. A.

There can be no question that Brower Piven, from among the competing law firms here, brings the greatest amount of relevant experience to this Action as its attorneys have served in leadership positions in similar cases for more than 20 years. Accordingly, Brower Piven should be appointed lead counsel here.

### IV.    CONCLUSION

For the foregoing reasons, Plaintiff Cohen respectfully requests that this Court (1) consolidate the Actions and (2) appoint Brower Piven as lead counsel.

Dated:  New York, New York
        February 4, 2008

                                        Respectfully submitted,

                                        **BROWER PIVEN**
                                          A Professional Corporation

                                        By: /s/ *David A.P. Brower*
                                            David A.P. Brower
                                            Elizabeth A. Schmid
                                            488 Madison Avenue
                                            Eighth Floor
                                            New York, New York 10022
                                            Telephone: (212) 501-9000
                                            Facsimile:  (212) 501-0300

                                            *Counsel for Plaintiff Cohen and*
                                            *Proposed Lead Counsel*

## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFFREY HARRIS, derivatively on behalf of Citigroup Inc., <br> v. <br> CHARLES O. PRINCE, ET AL., <br> Defendants. | 1:07-cv-09841-SHS |
| GARY CINOTTO, derivatively on behalf of Citigroup Inc., <br> v. <br> CHARLES O. PRINCE, ET AL., <br> Defendants. | 1:07-cv-09900-SHS |
| BENJAMIN NATHANSON, derivatively on behalf of Citigroup Inc., <br> v. <br> CHARLES O. PRINCE, ET AL., <br> Defendants. | 1:07-cv-10333-SHS |
| SAM COHEN, derivatively on behalf of Citigroup Inc., <br> v. <br> CITIGROUP INC., ET AL., <br> Defendants. | 1:07-cv-10344-SHS |
| WALTER E. RYAN, JR., derivatively on behalf of Citigroup Inc., <br> v. <br> CHARLES O. PRINCE, ET AL., <br> Defendants. | 1:07-cv-11581-UA |

## CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2008, I electronically filed via the Court's

Electronic Case File ("ECF") system the following documents in accordance with the

Federal Rules of Civil Procedure and/or the Southern District of New York Local Rules,

Southern District of New York:

(1)   PLAINTIFF SAM COHEN'S MEMORANDUM OF LAW IN OPPOSITION TO
COMPETING MOTIONS TO APPOINT LEAD COUNSEL AND IN FURTHER
SUPPORT OF PLAINTIFF SAM COHEN'S MOTION FOR LEAD COUNSEL;

(2)  SECOND DECLARATION OF ELIZABETH A. SCHMID IN SUPPORT OF
PLAINTIFF SAM COHEN'S MEMORANDUM OF LAW IN OPPOSITION TO
COMPETING MOTIONS TO APPOINT LEAD COUNSEL AND IN FURTHER
SUPPORT OF PLAINTIFF SAM COHEN'S MOTION FOR LEAD COUNSEL WITH
EXHIBIT THERETO; AND

(3)  CERTIFICATE OF SERVICE.

I hereby certify that these documents filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic

Filing.

Brian James Robbins
ROBBINS UMEDA & FINK, LLP
610 West Ash Street, Suite 1800
San Diego, CA 92101
Telephone: (619)-525-3990

Thomas G. Amon
LAW OFFICES OF THOMAS G. AMON
500 Fifth Avenue
Suite 1650
New York, New York 10110
Telephone: (212)-810-2430

***Counsel for Plaintiff Jeffrey Harris***
Frank J. Johnson
Frank A. Bottini, Jr.
JOHNSON BOTTINI, LLP
655 W. Broadway, Suite 1400
San Diego, CA 92101
Telephone: (619) 230-0063

Thomas G. Amon
LAW OFFICES OF THOMAS G. AMON
500 Fifth Avenue
Suite 1650
New York, New York 10110
Telephone: (212)-810-2430

***Counsel for Plaintiff Gary Cinotto***

Clinton A. Krislov
Jeffrey M. Salas
KRISLOV & ASSOCIATES, LTD.
20 North Wacker Drive, Suite 1350
Chicago, IL 60606
Telephone: (312) 606-0500

Christopher Marlborough
FARUQI & FARUQI, LLP
369 Lexington Avenue
Tenth Floor
New York, New York 10017
Telephone: (516)-837-3227

*Counsel for Plaintiff Walter E. Ryan*

Thomas G. Amon
LAW OFFICES OF THOMAS G. AMON
500 Fifth Avenue
Suite 1650
New York, New York 10110
Telephone: (212)-810-2430

Jack Landskroner
LANDSKRONER GRIECO MADDEN, LTD
1360 West 9th, Suite 200
Cleveland, OH 44113
Telephone: (216) 522-9000

*Counsel for Benjamin Nathanson*

Brad S. Karp
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON, LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: (212) 373-3000

*Counsel for Defendants*

Executed: February 4, 2008
           New York, New York

                                        /s/ *David A.P. Brower*____
                                        David A.P. Brower

3